It should first be stated that at the hearing of this case the Ventnor Building and Loan Association, by its counsel, stated that that association, as defendant, had no interest in *Page 160 
this case and all counsel requesting me to sit (notwithstanding my being a director of said association) I did so.
On October 23d 1922, complainant obtained of the defendant a loan of $10,000, the terms of which are set out in the bond and warrant and mortgage, then given by the complainant and her husband, as follows:
"Whereas the above-named obligors have secured from the above-named obligee the advance or loan of the sum of ten thousand dollars upon fifty shares of stock in the thirty-ninth series of the stock issued by the above-named obligee, said advance or loan having been made in anticipation of the maturity value of said shares of stock, and said advance being considered as a payment of the maturity value of said stock before it is due.
"And whereas by an assignment bearing even date herewith, the said obligors have duly assigned and transferred said shares of stock to the said obligee as collateral security for the payment of said advance or loan, and the interest, dues, premiums, fines or other indebtedness that will arise by virtue thereof, according to the provisions of the constitution and by-laws of the association of said obligee.
"And whereas the said obligee cannot make said advance or loan to said obligors upon said shares of stock unless said obligors execute and deliver to the said obligee a bond and warrant and mortgage upon real estate as security for the payment of said advance or loan and the other obligations herein created, according to the laws of the State of New Jersey, relating thereto, and the constitution and by-laws and the rules and regulations of the association of said obligee.
"Now therefore, the condition of this obligation is such that if the above bounden obligors or their heirs, executors, administrators or any of them, shall and do well and truly pay or cause to be paid unto the above-named obligee, its certain attorney, successors or assigns the said just sum of ten thousand dollars advanced in the manner and for the purposes stated aforesaid, lawful money as aforesaid, at or before the time when each of the aforesaid shares of stock shall be worth a net sum of two hundred dollars on the books thereof, and said series of shares shall mature, together with monthly payments of interest thereon at the rate of one-half of one per centum per month, as is now or may hereafter be provided for in the constitution and by-laws of the said obligee, dues on aforesaid shares of stock at the rate of one dollar per share per month, a monthly installment premium of ten cents for each one hundred dollars of said advance or loan, or fractional part thereof, figured upon said principal sum advanced as stated aforesaid, and such fines or other indebtedness as shall appear by the books of said obligee to be due and payable, all of the said installments to be paid monthly, at such times and places and in such sums and amounts as herein provided for, and if not mentioned herein then as now are or may hereafter be *Page 161 
provided for and required by the constitution and by-laws of the said association of said obligee, without any fraud or further delay, * * *."
One Eva J. Armstrong, the daughter of the complainant, obtained a judgment by default against her mother. By virtue of the execution issued in said proceedings the premises were sold by the sheriff to the defendant Block.
At the time of the sale it was announced that it was sold subject to Ventnor Building and Loan Association's mortgage of $10,000 and a second mortgage of $2,500, with approximately two years' interest due.
Prior to the sale, the present complainant had made payments in accordance with the terms of the mortgage, and also paid on account of the principal thereof the sum of $1,800.
The attorney of the plaintiff knew that payment had been made on account of the building and loan mortgage, but not knowing the exact amount thereof announced that "the sale would be made subject to municipal assessments and taxes, whatever they may be, taxes 1925, $374.13, paving assessment bill $35 unpaid, also first mortgage Ventnor Building and Loan Association $10,000, second held by plaintiff $2,500, with approximately two years' interest due." This clause was upon the conditions of the sale and the testimony of the sheriff was that: "It was written in this manner. I conducted that as I conduct all sales. The sale was announced. The advertisement was read. The conditions of sale were read and I inquired of the attorney, Mr. Reeves, if he had any statement to make and Mr. Reeves then made the statement which you have just read, which was on this blank before the sale was cried even, then the bid was made and the conditions of sale as to the purchase signed by Mr. Block."
There can be little, if any, doubt as to the judgment obtained by Mrs. Armstrong. It manifestly was by consent of the present complainant and the testimony and occurrences are strongly suggestive that the attorney for the daughter was also acting, if not for the mother, at least with her approval. *Page 162 
The bill alleges: "3. As collateral security for the payment of said loan of $10,000, complainant also subscribed for and assigned to said Ventnor Building and Loan Association fifty shares of its stock, and paid all dues and charges thereon and in connection therewith and all interest becoming due upon said bond and mortgage from and beginning with the month of July, 1922, to and including the month of November, 1925."
It is manifest that the loan was primarily secured (as stated in the bond) upon the fifty shares of stock, which were assigned as security for the loan, and that the said bond and mortgage were, according to the law as governing said associations, given in additional security therefor.
The said stock being of considerable value at the time of sale, the question is whether the payments theretofore made on said indebtedness, and the payment of the said sum of $1,800 should be credited upon the indebtedness to the Ventnor Building and Loan Association, or whether the stock is the property of the said complainant.
As to the payment of the sum of $1,800, this is clearly a payment on account of the indebtedness, and was so made.
The only question is, What amount was due the Ventnor Building and Loan Association at the time of the sale, by reason of the loan made by it to Calverley? Manifestly, all payments made on account thereof must be credited in accordance with the terms as set out in the mortgage and other securities executed by Mrs. Calverley.
It will be noted that any case heretofore decided has been upon the theory that the stock was assigned as collateral security to the mortgage as was set forth in this bill. In this case, however, the stock was the original security for the loan, and all payments made thereon, must be credited either as interest, other charges, or on account of principal.
Article 2, section 7, of the constitution of the said association provides:
"When the shares of stock upon which mortgages or other loans have been granted shall have reached the matured value of two hundred dollars each, this amount shall be credited to the borrower *Page 163 
and the loan or loans shall be fully paid and satisfied, if all dues, interest, fines and other indebtedness have been paid in full."
Article 14, section 1, provides:
"Every member twenty-one years of age or over shall, for each share held in his own right, be entitled to a loan of two hundred dollars, and whenever a loan is offered, and there is more than one applicant, it shall be disposed of by the board to the person first applying for same, provided his loan is granted."
It would appear absurd to believe that if the stock was paid in full, the mortgage would be non-effective; but that if any amount, no matter how small, remain due, the owner of the land would be entitled to no credit whatever thereon.
In other words, if at the time of sale the shares of stock had reached their matured value of $200 each, the amount should be credited to the borrower and the loans be fully paid; but if the sale of said shares should have reached only $195 each, no credit could be made.
At the conclusion of the hearing I stated:
"Gentlemen, doesn't this resolve itself into two questions; the first of which can be divided into two parts: First, can announcement made by the sheriff, by direction of the attorney of the plaintiff, manifestly false upon its face, bind the purchaser who signs that condition of sale? It is admitted in this entire case, on the first subdivision of that question, that $1,800 had been paid on account of the principal and that there was only due on the mortgage as principal the sum of $8,200. The fact was known by counsel or attorney who gives the information to the sheriff and is known also by the purchaser. It must have been known by the owner of the land who — it is not testified whether she was present or not at the sale. Now, is the purchaser bound by that condition of sale in so far as the $1,800 payment on account of the principal is concerned?
"Secondly, is he bound on that condition of sale for the amount of money which this woman has paid into the building and loan association, regardless of any other question except the question of the condition of sale and the fact that *Page 164 
the money is paid? These two subdivisions make the first question to be determined.
"If he is not bound by that, there is the subsequent question. If he is bound by that condition, it seems unnecessary to determine the remaining question, which is: Is the holder of building and loan association stock, which has been assigned as collateral for a loan of money advanced by the building and loan association to the owner of the stock and who also, as a condition of that loan on the stock gives a bond and mortgage as additional collateral for the same loan, and who, thereafter by her own act or by the act of the law becomes divested of the title to the land, is or is not the original owner of the stock, who has assigned it as collateral, entitled to a credit to her personally for the amount of payments made on account of the principal of the mortgage or is that a payment on account of the principal of the mortgage for which the purchaser is entitled to a credit? In other words, does the purchaser, either at private or public sale of a property subject to a building and loan association, buy that property subject to the then amount due the building association, after crediting all payments, or is that sale made subject to the principal of the mortgage, all payments thereon reverting to the holder of the land?
"Now, are they not the two legal propositions — one, as I say, subdivided?
"Because of the peculiar condition of this case, the court is bound to consider whether or not this announcement by the sheriff, by reason of the information given to him by the counsel; whether or not there has been collusion between the plaintiff and the defendant, and whether if that announcement was made, whether or not Mrs. Calverley can take advantage of that statement under the circumstances.
"The fact that her daughter was the plaintiff — and it is quite manifest that it was a friendly suit, because they were together afterwards, apparently family relations were not disturbed at all — together with the fact that the same attorney represented Mrs. Calverley in at least the preparation of the petition for surplus money to the extent, at least, that it was *Page 165 
sent by him to the justice of the supreme court with a statement that it was filed pro se, of course, and that on the file there is no statement of attorney pro se, or anywhere else and it is in the same form that all other papers apparently were in the same case.
"Mr. Carson — I think, if your honor please, at the end of the paper signed by Mrs. Calverley as attorney pro se.
"The Court — Yes, it is so marked, petitioner attorney, prose, but the papers were prepared and mailed by the same attorney of the daughter. I simply call attention to that fact because that may enter into the matter."
I will advise a decree in accordance with the above views.